**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KISHORE JAYAKUMAR,<br><br>Plaintiff,<br><br>v.<br><br>MICHIGAN HEALTH CLINICS, P.C.,<br>d/b/a MI HEALTH CLINIC<br>d/b/a MICHIGAN HEALTH CLINIC<br>d/b/a MICHIGAN HEALTH CLINICS<br>d/b/a MICHIGAN SKIN CLINIC<br>d/b/a MICHIGAN SKIN CLINICS,<br>*et al.*,<br><br>Defendants. | Civil Action No. 24-01842 (ABJ) |

**ORDER**

Plaintiff Kishore Jayakumar brought this action against Michigan Health Clinics, P.C. ("Michigan Health Clinics") and its officers David Stockman, Brian Hart, and Magdalena Perez. Plaintiff was employed by defendants as a dermatologist, providing virtual clinical services. Am. Compl. [Dkt. # 18] ¶ 19. Plaintiff alleges that the defendants willfully failed to pay him wages, breached his employment contract, and fraudulently induced his continued work. Am. Compl. ¶¶ 1–2. Defendant Stockman has responded with a flurry of motions to dismiss, strike, or transfer plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1)–(3), (6), and 12(f)(2), Emergency Mot. to Strike, Transfer, and/or Dismiss Pl.'s Am. Compl. in its Entirety [Dkt. # 20-1] ("Stockman Mot."), as well as a motion to expedite, which this Court has already addressed. Min. Order (Jan. 12, 2026). Defendant Hart responded with a motion to transfer the claims against himself and the corporate entity in the interest of justice pursuant to 28 U.S.C. § 1404(a). Def. Brian Hart's Mot. to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) [Dkt. # 42] ("Hart Mot.").

The Court finds that it lacks personal jurisdiction over defendants Stockman, Hart, and Perez. Therefore, the District of Columbia is not the proper venue for plaintiff's claims against the individual defendants, but the Court finds that transfer, as opposed to dismissal, is warranted in the interests of justice under 28 U.S.C. § 1406(a). While this court may exercise personal jurisdiction over the corporate defendant, Michigan Health Clinics, the balance of private and public interests and the efficiency of a single adjudication weigh in favor of a transfer of the claims against Michigan Health Clinics as well in the interests of justice under section 1404(a). Therefore, the motions to transfer are hereby **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a resident of the District of Columbia. Am. Compl. ¶ 5. Defendant Michigan Health Clinics is a Michigan corporation with its principal place of business in Saginaw, Michigan. Am. Compl. ¶ 6. During the period relevant to the dispute, individual defendants David Stockman, Brian Hart, and Magdalena Perez were, respectively, the owner, Chief Operating Officer, and Chief Administrative Officer of Michigan Health Clinics. Am. Compl. ¶¶ 7–9. They are each residents of Saginaw, Michigan. Am. Compl. ¶¶ 7–10.

On or about August 17, 2023, plaintiff began negotiating the terms of an employment contract with the individual defendants. Am. Compl. ¶¶ 11–15. On or about November 1, 2023, plaintiff executed a contract ("Employment Agreement") with defendant Michigan Health Clinics. Am. Compl. ¶ 16; *see also* Pl.'s Ex. 1 to Am. Compl. [Dkt. # 18-1] ("Pl.'s Ex. 1") at 1. Plaintiff alleges that pursuant to the terms of the Employment Agreement, he "provide[d] virtual dermatological services to patients from his office in the District of Columbia" as part of Michigan Health Clinics' professional practice, for which he was to be compensated at a rate of $60.00 per

net Relative Value Unit ("RVU").[1] Am. Compl. ¶¶ 19–21; *see also* Pl.'s Ex. 1 at 1. Plaintiff alleges that between November 2023 and June 2024, he completed RVUs totaling $141,972.60 in earnings. Am. Compl. ¶ 21. Plaintiff further alleges that defendants paid him only $10,500, Am. Compl. ¶¶ 25–26, despite repeated assurances by the individual defendants that additional payments were forthcoming or had already been made. Am. Compl. ¶¶ 30–43.

Plaintiff filed an initial complaint on June 26, 2024, alleging that the defendants violated the D.C. Wage Payment and Collection Law, D.C. Code § 32-1302. Compl. [Dkt. # 1] ¶¶ 28–34. He amended his complaint on October 13, 2025, adding two claims. In the now-operative complaint, plaintiff alleges that defendants 1) violated D.C. Code § 32-1302 "by knowingly failing to timely pay [him] all wages due," Am. Compl. ¶¶ 67–73; 2) breached the Employment Agreement by failing to pay wages due or provide plaintiff with his RVU data, Am. Compl. ¶¶ 22, 74–79; and 3) perpetrated fraud against him by inducing his initial and continued employment through their false statements about promised and forthcoming wages. Am. Compl. ¶¶ 43, 80–86.

On November 7, 2025, Stockman moved to "strike and dismiss the Amended Complaint in its entirety, with prejudice," for lack of personal jurisdiction and a range of alleged defects, or to transfer the suit to the Eastern District of Michigan under 28 U.S.C. §§ 1406 or 1404(a). Stockman Mot. at 6–7. On February 25, 2026, defendant Hart moved to transfer the action to the Eastern District of Michigan under 28 U.S.C. § 1404(a). Hart Mot. at 1–2.

The motions have been fully briefed. *See* Stockman Mot.; Pl.'s Mem. of L. in Support of His Opp. to Stockman Mot. [Dkt. # 27] ("Pl.'s Stockman Opp."); Def.'s Reply to Opp. and Additional Support of Emergency Mot. to Strike, Transfer, and/or Dismiss [Dkt. # 28]

---

1 RVUs are a form of billing unit which "reflect a physician's volume of work and level of effort in treating patients," rather than hours worked. Anne C. Kantner, M.D., *Understanding and Improving Your Work RVUs*, FPM, Mar./Apr. 2023, at 4, https://perma.cc/AB3C-SQEN.

("Stockman's Reply); Def. Brian Hart's Brief in Support of Hart Mot. to Transfer [Dkt. # 42-1] ("Hart Mot."); Pl.'s Mem. of L. in Support of His Opp. to Hart Mot. [Dkt. # 43] ("Pl.'s Hart Opp.").

## STANDARD OF REVIEW

### Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). In order to survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a prima facie showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). To establish that personal jurisdiction exists, the "plaintiff must allege specific acts connecting [the] defendant with the forum." *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001), quoting *First Chi.*, 836 F.2d at 1378 (internal quotation marks and citations omitted). A plaintiff cannot rely on conclusory allegations to establish personal jurisdiction. *First Chi.*, 836 F.2d at 1378 ("Conclusory statements . . . '[do] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction . . . .'") (alteration in original), quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983). Courts may consider material outside of the pleadings when deciding a motion to dismiss for lack of personal jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, . . . the court may inquire, by affidavits or otherwise, into the facts as they exist.").

### Venue

Under the general venue statute, venue is proper in any judicial district where (1) "any defendant resides, if all defendants are residents of the State in which the district is located;" (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of property that is the subject of the action is situated;" or (3) "any defendant is subject to the court's personal jurisdiction with respect to such action," "if there is no district in which an action may otherwise be brought as provided in this section." 28 U.S.C. § 1391(b). Pursuant to 28 U.S.C. § 1406(a), "the district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Even if venue is proper, though, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The court has "broad discretion" to transfer a case under section 1404. *In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983). A defendant, as the moving party, bears the burden of establishing that transfer is proper. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).

The decision to transfer requires an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The threshold question under section 1404(a) is whether the action "might have been brought" in the transferee district. If the prerequisites to transferability are satisfied, the court must then go on to balance case-specific private interest and public interest factors to determine whether transfer is appropriate. *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000). Private interest considerations include:

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants;
>
> (2) the defendants' choice of forum;
>
> (3) whether the claim arose elsewhere;
>
> (4) the convenience of the parties;

> (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
>
> (6) the ease of access to sources of proof.

*Trout Unltd. v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). The public interest considerations include:

> (1) the transferee court's familiarity with the governing laws;
>
> (2) the relative congestion of the calendars of the potential transferee and transferor courts; and
>
> (3) the local interest in deciding local controversies at home.

*Id.*

## ANALYSIS

### I. The District of Columbia May Properly Exercise Jurisdiction over Defendants.

Personal jurisdiction may be specific or general. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Because plaintiff alleges no facts indicating defendants have any connection to the District of Columbia "unrelated to the underlying suit (*e.g.*, domicile)," he must "rely on specific jurisdiction only." *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014).

Establishing specific jurisdiction is ordinarily a "two-part inquiry." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). A court must first determine whether the facts alleged show that "jurisdiction is applicable under the state's long-arm statute," and then "whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Id.*, citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). However, because the District of Columbia's long-arm statute extends to the outer bounds of due process by establishing personal jurisdiction over any legal person who "transact[s] any business in the District of Columbia," D.C. Code § 13-423(a)(1), "the statutory and constitutional jurisdictional questions . . . merge into a

single inquiry," *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013), quoting *Ferrara*, 54 F.3d at 828. This due process inquiry requires that defendants have "purposefully established minimum contacts" within the District of Columbia. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Plaintiff sufficiently alleges that defendants established these minimum contacts by identifying, retaining, supervising, and paying plaintiff for the work he performed in the District of Columbia.[2] Am. Compl. ¶¶ 11–19, 23–41. Here, as in *Burger King,* defendants "deliberately reach[ed] out" beyond Michigan and negotiated with plaintiff to create an employment relationship, realize its benefits, and maintain plaintiff's services despite nonpayment of wages. *See* 471 U.S. at 479–80 (alteration in original) (internal quotations omitted); *see also* Am. Compl. ¶¶ 11–20, 23–43.

Having "purposefully avail[ed] [themselves] of the privilege of conducting" business within the District, *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), defendants could "reasonably anticipate being haled into court" here, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This Court's exercise of personal jurisdiction therefore comports with the "traditional notions of fair play and substantial justice" embodied in the due process clause. *Int'l Shoe*, 326 U.S. at 316, quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).

---

2 While courts in this district have generally held that jurisdiction over a corporation does not confer jurisdiction over its officers, exceptions exist where individual officers are "integrally involved" in corporate operations, including through "directing or controlling company policy." *Duarte v. Nolan*, 190 F. Supp. 3d 8, 13 (D.D.C. 2016), quoting *Nat'l Cmty. Reinv. Coal. v. NovaStar Fin., Inc.*, 631 F. Supp. 2d 1, 6 (D.D.C. 2009). Plaintiff sufficiently alleges that Stockman (as owner-operator), Hart (as Chief Operating Officer), and Perez (as Chief Administrative Officer) exercised this control through their "power to supervise and control [p]laintiff's work," schedule, employment status, and rate and manner of pay. Am. Compl. ¶¶ 62–66. Additionally, each defendant individually "reach[ed] out" to plaintiff to create and maintain the parties' employment contract. *Burger King*, 471 U.S. at 479.

Consequently, defendant Stockman's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. Pro. 12(b)(2) is **DENIED**.

## II. Venue in the District of Columbia Is Proper Only for Michigan Health Clinics.

"A plaintiff who establishes jurisdiction over [a] defendant's person must *additionally* meet venue specifications," which must "be analyzed discretely." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312, 315–16 (D.C. Cir. 1985) (emphasis in original). Venue must be established "with respect to each cause of action and each [defendant]." *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978) (footnotes omitted). While venue in the District of Columbia is proper for Michigan Health Clinics under 28 U.S.C. §§ 1391(b)(1) and (c)(2), it is improper for Stockman, Hart, and Perez.

### A. Section 1391(b)(1) and (c)(2) Create Venue for Michigan Health Clinics

"For all venue purposes," a defendant corporate entity is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Here, plaintiff alleges that on or about September 20, 2023, defendants extended him a job offer for a position as a dermatologist at Michigan Health Clinics, and that he executed an Employment Agreement with the corporate entity under which he was "supposed to receive compensation based on Relative Value Units "on the 1st of each month for any RVUs generated greater than 30 days after completion of [the patient's] office visit note." Am. Compl. ¶¶ 14, 16. Because the complaint alleges that Michigan Health Clinics had minimum contacts with the District through its employment of the plaintiff here, the work he performed on its behalf here, and the execution of the Employment Agreement, the Court may properly exercise personal jurisdiction over the clinic, and therefore venue in the District of Columbia is proper for the corporate defendant.

**B. Venue in the District of Columbia Is Improper for Stockman, Hart, and Perez**

Venue properly lies in the judicial district where "a substantial part of the events or omissions giving rise to [plaintiffs'] claim[s] occurred." 28 U.S.C. § 1391(b)(2). Here, Stockman, Hart, and Perez all reside in Saginaw, Michigan. *See* Am. Compl. ¶¶ 7–9. "The facts giving rise" to plaintiff's claims did not "predominantly occur[] in Washington, D.C." Pl.'s Hart Op. at 7 (cleaned up). Rather, they occurred in Saginaw, which lies in the Eastern District of Michigan.[3]

Count One alleges failure to pay wages. *See* Am. Compl. at ¶ 71. Courts in this district have previously held that "where claims arise from a plaintiff 'being owed compensation from . . . employment,' all of the events giving rise to the litigation occur where 'all computation and processing of payments owed to the plaintiff occurred.'" *Shay v. Sight & Sound Sys., Inc.*, 668 F. Supp. 2d 80, 85 (D.D.C. 2009), quoting *Smith v. U.S. Investigations Servs., Inc.*, 2004 WL 2663143, at *3 (D.D.C. Nov. 18, 2004). In this case, payment computation and processing occurred in the Eastern District of Michigan, where Michigan Health Clinics is headquartered and where the individual defendants work. *See* Am. Compl. ¶¶ 7–10.

Counts Two and Three allege that defendants breached the Employment Agreement with plaintiff and fraudulently induced him to continue his employment. The Employment Agreement was "made and entered into at Saginaw, Michigan." Pl.'s Ex. 1 at 1. Defendants' alleged decisions to deny plaintiff access to his RVU data and withhold payment in violation of that contract, and their exhortations to plaintiff to continue working under the contract, were made in Saginaw, Michigan. The actions giving rise to plaintiff's claims – formation of plaintiff's contract, breach of that contract, and inducement of continued reliance on that contract – therefore occurred in

---

3 *See* U.S. Dist. Ct., Eastern Dist. of Mich. Home Page, https://perma.cc/WK5N-ZASG (stating that the "Eastern District of Michigan has jurisdiction over federal cases, criminal and civil, in Michigan's eastern Lower Peninsula").

Saginaw, Michigan. This renders venue in the District of Columbia inappropriate under 28 U.S.C. § 1391(b)(2). *See, e.g.*, *Naartex*, 722 F.2d at 789 & n.17 (finding a claim arose in Wyoming, and not the District of Columbia, under 28 U.S.C. § 1391(b) when "the great weight of significant events relating to th[e] action," including a land lottery and lease issuance, took place in Wyoming); *Davis v. Am. Soc'y Civil Eng.*, 290 F. Supp. 2d 116, 123 (D.D.C. 2003) (finding a claim arose in Virginia, and not the District of Columbia, under 28 U.S.C. § 1391(b) where the defendants "made decisions regarding the plaintiff's termination at meetings that took place in Reston, Virginia; Seattle, Washington; Houston, Texas; and Wilmington, Delaware," despite plaintiff's work in D.C.).

## III. The Interests of Justice Favor Transfer to the Eastern District of Michigan.

While venue in the District of Columbia is improper for the individual defendants, dismissal is not the appropriate remedy. Under 28 U.S.C. § 1406(a), the interests of justice generally require transfer to a district in which the action could have been brought. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). As Stockman, Hart, and Perez reside in the Eastern District of Michigan, Am. Compl. ¶¶ 7–9, venue would have been proper there under 28 U.S.C. § 1391(b)(1). The motion to transfer to the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a) is therefore **GRANTED** as to those defendants.

The remaining issue to be resolved then, is motion to transfer the claims against Michigan Health Clinics under 28 U.S.C. § 1404(a). *See* Hart Opp. at 12.

### A. Private Interest Factors Favor Transfer

Although plaintiff's choice of forum is "a paramount consideration" under Section 1404(a), *Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 172 (D.D.C. 2016), quoting *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 26 (D.D.C. 2008), the remaining private interest factors weigh

in favor of transfer. Significantly, Michigan Health Clinics undertook its allegedly wrongful payment computations and fraudulent inducements in the Eastern District of Michigan. "Courts in this district have held that claims 'arise' under 28 U.S.C. § 1404(a) in the location where the corporate decisions underlying those claims were made." *Treppel v. Reason*, 793 F. Supp. 2d 429, 436 (D.D.C. 2011), citing *Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 4 (D.D.C. 2004). This factor therefore supports transfer.

The convenience of the parties also favors transfer. Plaintiff must pursue claims against Stockman, Hart, and Perez in the Eastern District of Michigan, and litigating related claims against Michigan Health Clinics in the same forum promotes overall efficiency. *See U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 48 (D.D.C. 2011) (stating that for convenience of litigants "to weigh in favor of transfer, litigating in the transferee district must not merely shift inconvenience to the plaintiffs, but rather should lead to an overall increase in convenience for the parties").

Also the relevant sources of proof for plaintiff's claims (such as payroll and RVU files) are likely stored at defendant's headquarters in Saginaw. The same is true of any potential witnesses beyond the individual defendants themselves, who could testify as to defendant's payroll practices (such as employees responsible for managing payroll and RVU calculations). Although electronic

access to records and the absence of identified unavailable witnesses in the District lessen the weight of these considerations,[4] they still tilt in some degree towards transfer.

**B. Public Interest Factors Favor Transfer**

Judicial economy strongly favors transfer. Courts in this district consistently emphasize the importance of avoiding duplicative litigation, particularly where related claims are already proceeding in another forum. *See, e.g.*, *Cephalon*, 551 F. Supp. 2d at 29 (D.D.C. 2008) (finding that "the presence of closely related litigation" in a transferee district is "the most significant factor weighing in favor of transferring a case"), quoting *Barham v. UBS Fin. Servs.*, 469 F. Supp. 2d 174, 180 (D.D.C. 2007); *Wildearth Guardians v. U.S. Bureau of Land Mgmt.*, 922 F. Supp. 2d 51, 55 (D.D.C. 2013) (finding that "the desire to avoid multiplicity of litigation . . . weighs heavily in favor of transfer"). *See also Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 50 (D.D.C. 2017) (collecting cases). Transferring the remaining claims alongside those against the individual defendants would consolidate proceedings arising from the same events and promote efficiency.

The transferee court's familiarity with the governing law does not favor either forum. In this diversity action, state substantive law applies under the District of Columbia's choice-of-law rules. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Plaintiff's wage claim (Count One) relies on the D.C. Wage Payment and Collection Law, while the breach of contract claim (Count Two) is governed by Michigan law pursuant to the parties' agreement. *See* Pl.'s Ex. 1 at 5 (stating

4 While the availability of witnesses may be "the most critical factor to examine under 28 U.S.C. § 1404(a)," *Treppel*, 793 F. Supp. 2d at 438, quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995), courts in the District of Columbia devalue this factor when the movant does not allege witnesses "may actually be unavailable for trial." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 33 & n.5 (D.D.C. 2008). *See also Trout Unltd. v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996), citing 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure: Jurisprudence and Related Matters, § 3851 at 420–22 (2d ed. 1986).

the parties' employment agreement "shall be governed by the laws of the State of Michigan"); *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995) ("In diversity cases . . . [t]he District of Columbia Court of Appeals has adopted the general rule 'that parties to a contract may specify the law they wish to govern . . . .'"), quoting *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980).

And the fraud claim (Count Three) would be governed by Michigan law if adjudicated in this district, applying the "most significant relationship" test. *Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 566 A.2d 31, 40–41 (D.C. 1989), citing Restatement (Second) of Conflict of Laws § 145. *Cf. Kroger v. Legalbill.com*, 436 F. Supp. 2d 97, 104 (D.D.C. 2006) (noting that Tennessee law's control over the parties' contract dispute "reinforced . . . that Tennessee is the jurisdiction with the more significant relationship to the parties' dispute over various alleged misrepresentations" and fraud). If transferred, however, Michigan choice-of-law rules would likely point to District of Columbia law. *See Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 698 (6th Cir. 2013) (stating in choice of law disputes, "Michigan law recognizes the place where the injury was sustained as the place of the wrong"), citing *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 468 (Mich. 1997). As a result, this factor does not weigh heavily in favor of either forum, and courts in both forums are equally capable of applying the appropriate authorities.

The second factor, relative congestion of the courts, is similarly close, but it tends to favor transfer to the Eastern District of Michigan.[5]

And, the final factor, local interest in resolving the controversy, favors the Eastern District of Michigan. While the District of Columbia does have an interest in protecting its citizens against the wrongful conduct alleged here, the Eastern District Michigan has a stronger interest in regulating entities operating within its borders and addressing alleged misconduct that occurred there. *See Adams v. Bell*, 711 F.2d 161, 167 n.34 (D.C. Cir. 1983) ("[T]rial in the locality of the policies or transactions at issue is one way to respect [local] interests," as it may "result in decisions directly and vitally affecting large numbers of citizens."); *Montgomery*, 532 F. Supp. 2d at 34 (despite the District of Columbia's "interest in the employment of the plaintiff who worked here," the location of defendant's headquarters and wrongful corporate conduct conferred a stronger local interest on Virginia); *Treppel*, 793 F. Supp. 2d at 440 (same). *See also Trout Unltd. v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996) (finding a stronger local interest in the location where "[a] clear majority of the operative events took place").

Five of the six private interest factors and two of the three public interest factors favor transfer, as does the significant interest in judicial economy. The motion to transfer plaintiff's remaining claims against Michigan Health Clinics to the Eastern District of Michigan under 28 U.S.C. § 1404(a) is therefore **GRANTED**.

---

5 *See* Admin. Off. of the U.S. Courts, *U.S. District Courts—Federal Court Management Statistics–Profiles* (Dec. 31, 2025), https://perma.cc/G5UX-2ES3. At last reporting, the Eastern District of Michigan averaged 357 pending cases per judgeship, with a median of 8.2 months elapsed between a civil filing and final disposition, and 8.9% of civil cases over three years old. The District of Columbia averaged 464 pending cases per judgeship, with a median of 7.3 months elapsed between a civil filing and final disposition, and 22.1% of civil cases over three years old.

## CONCLUSION

While this Court may exercise personal jurisdiction over all defendants, venue is not proper for Stockman, Perez, and Hart. The motion to transfer plaintiff's claims pursuant to 28 U.S.C. § 1406(a) against these individual defendants to the Eastern District of Michigan is therefore **GRANTED**. Because the balance of the interests of justice weighs in favor of transferring plaintiff's claims against defendant Michigan Health Clinics, P.C. to the Eastern District of Michigan, the motion to transfer pursuant to 28 U.S.C. § 1404(a) is also **GRANTED**, and this case shall be transferred in its entirety to the Eastern District of Michigan.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE: May 20, 2026